**OLD KENT BANK AND TRUST COM-
PANY, Plaintiff,**

v.

**William McC. MARTIN, Jr., individually
and as Chairman of the Board of Gov-
ernors of the Federal Reserve System,
C. Canby Balderston, individually and
as Vice-Chairman of said Board, M. S.
Szymczak, James K. Vardaman, Jr., A.
L. Mills, Jr., J. L. Robertson and
Charles N. Shepardson, individually and
as members of said Board, Defendants.**

Civ. A. No. 1993–58.

United States District Court
District of Columbia.

April 22, 1959.

Gerhard A. Gesell, and Henry T. Rath-
bun, Washington, D. C., for plaintiff.

Oliver Gasch, U. S. Atty., Edward P.
Troxell, Principal Asst. U. S. Atty., E.
Riley Casey, and Robert J. Asman, Asst.
U. S. Attys., Howard H. Hackley, Gen.
Counsel, Frederic Solomon, and Thomas
J. O'Connell, Asst. Gen. Counsel, Board
of Governors of the Federal Reserve
System, Washington, D. C., for defend-
ants.

James F. Bell, Washington, D. C.,
amicus curiae on behalf of the National
Ass'n of Supervisors of State Banks.

SIRICA, District Judge.

This is an action for a declaratory
judgment brought by the Old Kent Bank
and Trust Company of Grand Rapids,
Michigan, a state member bank of the
Federal Reserve System, to obtain a
ruling from this Court that the Federal
Reserve Board exceeded its statutory
powers when it declined to approve the
plaintiff's operation of several addition-
al branches or branch offices which plain-
tiff had acquired as a result of a merger
with Peoples National Bank of Grand
Rapids, Michigan, a national banking
association. Defendants, who are mem-
bers of the Federal Reserve Board,
moved to dismiss the complaint or, in
the alternative, moved for summary
judgment. Plaintiff then filed a cross-
motion for summary judgment. Since
there seems to be no genuine issue of
material fact and since the essential
issue is the lawfulness of the Board's
action under the Federal banking laws,

the Court will consider this motion as one for summary judgment.

The Board refused to approve the operation by plaintiff of the additional branches on the ground that this would probably have an adverse effect upon competition in the Grand Rapids area. The source of the Board's authority in approving the operation of branch banks is derived from Section 9 of the Federal Reserve Act, as amended (12 U.S.C.A. § 321), which reads in part as follows:

"Any such State bank which on February 25, 1927, has established and is operating a branch or branches in conformity with the State law, may retain and operate the same while remaining or upon becoming a stockholder of such Federal reserve bank; but no such State bank may retain or acquire stock in a Federal reserve bank except upon relinquishment of any branch or branches established after February 25, 1927, beyond the limits of the city, town, or village in which the parent bank is situated: *Provided, however,* That nothing herein contained shall prevent any State member bank from establishing and operating branches in the United States or any dependency or insular possession thereof or in any foreign country, on the same terms and conditions and subject to the same limitations and restrictions as are applicable to the establishment of branches by national banks except that the approval of the Board of Governors of the Federal Reserve System, instead of the Comptroller of the Currency, shall be obtained before any State member bank may hereafter establish any branch and before any State bank hereafter admitted to membership may retain any branch established after February 25, 1927, beyond the limits of the city, town, or village in which the parent bank is situated. The approval of the Board shall likewise be obtained before any State member bank may establish any new branch within the limits of any such city, town, or village (except within the District of Columbia)."

Thus, the statute requires that state member banks obtain the approval of the Board before they may "establish" branches and, under certain circumstances, before they may "retain" branches. It seems clear from ordinary usage as well as from the context of this statute that when plaintiff began operating *as its own* the former branches of Peoples Bank, it was "establishing" new branches. It would be difficult to argue that it was "retaining" branches because before the merger these branch facilities did not form any part of plaintiff's organization. Furthermore, no persuasive showing has been made that Congress intended to make any distinction, when it chose the word "establish", between plaintiff's creating new branch facilities where none had existed before, and acquiring the pre-existing branches of another bank in order to operate them as its own. In either case, the party concerned ends up with a greater number of branches than before. It is this act of increasing the number of branches that requires prior approval by the Board.

In addition, when Congress empowers an agency to "approve" an action, it normally requires the agency to consider the probable effects of the action within the area of agency responsibility. The existence of too much or too little competition may cause serious harm in banking as it may in other areas of business. Thus, it is important for the Board to consider whether an applicant may be seeking to establish a large number of branches in order to give it an undue competitive advantage over other member or non-member banks in a given locality.

When it denied plaintiff's application, the Board had substantial evidence before it to warrant a conclusion that plaintiff's operation of the proposed branches would be likely to have an adverse effect on banking competition in the Grand Rapids area.

For the above reasons, the defendants' motion for summary judgment is granted and plaintiff's cross-motion for summary judgment is denied.

Counsel will prepare an appropriate order.